IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES V. DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:07cv830-WC |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

James V. Davis (Davis) applied for disability insurance benefits pursuant to Title

XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* (the Act).  Davis's application

was denied at the initial administrative level.  Davis then requested and received a hearing

before an Administrative Law Judge (ALJ).  Following the hearing, the ALJ also denied

the claim.  The Appeals Council rejected a subsequent request for review.  The ALJ's

decision consequently became the final decision of the Commissioner of Social Security

(Commissioner).[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is

now before the Court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. §

636(c), both parties have consented to the conduct of all proceedings and entry of a final

judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to

---

[1]Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L.
No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to
Social Security matters were transferred to the Commissioner of Social Security.

Jurisdiction (Doc. #7);  Def.'s Consent to Jurisdiction (Doc. #6).  Based on the Court's

review of the record and the briefs of the parties, the Court REVERSES the

Commissioner's decision.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the

person is unable to

> engage in any substantial gainful activity by reason of any medically
> determinable physical or mental impairment which can be expected to result
> in death or which has lasted or can be expected to last for a continuous
> period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential

evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2006).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1? [the Listing of
> Impairments]
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next
> question, or, on steps three and five, to a finding of disability.  A negative
> answer to any question, other than step three, leads to a determination of
> "not disabled."

---

[2]A "physical or mental impairment" is one resulting from anatomical, physiological, or
psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory
diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*,

357 F.3d 1232, 1237-39 (11th Cir. 2004).  A claimant establishes a *prima facie* case of

qualifying disability once they have carried the burden of proof from Step 1 through Step

4.  At Step 5, the burden shifts to the Commissioner, who must then show there are a

significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's

Residual Functional Capacity (RFC).  *Id*. at 1238-39.  RFC is what the claimant is still

able to do despite his impairments and is based on all relevant medical and other

evidence.  *Id*.  It also can contain both exertional and nonexertional limitations.  *Id*. at

1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and

work experience to determine if there are jobs available in the national economy the

claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical

Vocational Guidelines[4] (grids) or call a vocational expert.  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary

or light work, inability to speak English, educational deficiencies, and lack of job

experience.  Each factor can independently limit the number of jobs realistically available

---

[3]*McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986), is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases.  *See, e.g., Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a

statutorily-required finding of "Disabled" or "Not Disabled."  *Id*.

The Court's review of the Commissioner's decision is a limited one.  This Court

must find the Commissioner's decision conclusive if it is supported by substantial

evidence.  42 U.S.C. § 405(g);  *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).

"Substantial evidence is more than a scintilla, but less than a preponderance.  It is such

relevant evidence as a reasonable person would accept as adequate to support a

conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may

not look only to those parts of the record which support the decision of the ALJ, but

instead must view the record in its entirety and take account of evidence which detracts

from the evidence relied on by the ALJ.  *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir.

1986).

> [The court must] . . . scrutinize the record in its entirety to determine the
> reasonableness of the [Commissioner's] . . . factual findings.  . . .  No
> similar presumption of validity attaches to the [Commissioner's] . . . legal
> conclusions, including determination of the proper standards to be applied
> in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.   ISSUES

#### A.   *Introduction*

Davis was thirty-six years old and had completed the eighth grade at the time of

the hearing before the ALJ.  (Tr. 18). Davis's prior work experience included

employment as a construction laborer, janitor, poultry plant worker, and forklift operator.

(Tr. 276-77). Employing the five-step process, the ALJ found Davis had not engaged in

substantial gainful activity at any time relevant to the decision (Step 1).  (Tr. 25).  At Step

2, the ALJ found Davis suffered from the severe impairments of borderline intellectual

functioning.  *Id*.  Nonetheless, the ALJ found Davis did not possess an impairment or

combination of impairments that met or equaled the criteria of any listed impairment set

forth in the Listing of Impairments (Step 3).  (Tr. 26-27).  At Step 4, the ALJ determined

Davis did not possess the RFC to perform any relevant past work.  (Tr. 28).

At Step Five, the ALJ evaluated Davis's RFC, age, education, and work

experience, as well as testimony from a vocational expert (VE) regarding the availability,

in significant numbers, of other work Davis could perform in the national economy.

Upon consideration of this evidence, the ALJ determined Davis possessed the RFC to

perform jobs that exist in significant numbers in the national economy.  (Tr. 28-29).

Consequently, the ALJ found Davis was not disabled within the meaning of the Act.  (Tr.

30).

   **B.      *Davis's Claims***

        Davis's claims are as follows: "Administrative *res judicata* precluded the ALJ

from revisiting the commissioner's initial award of benefits in December 1998 based on a

finding that Mr. Davis was mentally retarded absent new evidence documenting that Mr.

Davis is no longer mentally retarded;"  (2) "The ALJ's reasons for rejecting the opinion

of Dr. Cauthorn, Mr. Davis'[s] treating psychologist, are not based on substantial

evidence;" and (3) "The ALJ failed to sustain his burden of establishing that there is other

work in the national economy that Mr. Davis can perform." (Doc. #15 at 1).

 **IV.   DISCUSSION**

**Davis's claim regarding mental retardation.**

        Prior to this present application Davis was awarded disability benefits from 10

December 1998 to March 2002.  *See* (Tr. 26).  This prior disability finding was based on a

finding that Davis suffered from depressive disorder, an anxiety disorder, a personality

disorder, and mental retardation.  (Tr. 246, 249, 250, 251).  In the prior determination, the

ALJ relied on a diagnosis of mental retardation made by Doctor Lawrence Annis, Ph.D.

(Dr. Annis), a clinical and forensic psychologist.  Dr. Annis's testing revealed that Davis

has a full scale IQ score of 56 (verbal IQ of 63, a performance IQ of 54).  (Tr. 244).

Davis's benefits were terminated in March 2002 due to an outstanding felony warrant.

(Tr. 63-67).  In the present case, the ALJ rejected the earlier award of disability finding

the "record does not corroborate the presence of life-long mental retardation."

Davis argues the ALJ's failure to find Davis mentally retarded is a violation of *res judicata*. The Commissioner argues the ALJ is free to make his own determination because Davis's current application is a new issue, not subject to *res judicata* and that to subject the claim to *res judicata* would be contrary to SSA's national policy. Without deciding whether this claim is subject to *res judicata*, this Court finds that the ALJ's decision is not supported by substantial evidence.

The ALJ specifically acknowledged the prior finding of mental retardation by the previous ALJ as well as the previous "consultive psychological findings from September and November 1998." (Tr. 27). Because there was a previous finding of mental retardation, there is a strong presumption that Davis is still mentally retarded. *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir. 2001) ("[T]here is a presumption that mental retardation is a condition that remains constant throughout life.").

In her opinion, the ALJ expressly rejected the earlier determination of mental retardation, stating: "I consider the original award erroneous; and the psychological diagnoses in calendar 1998 misplaced (See Exhibits 1A, 6F, & 7F). The record does not corroborate the presence of life-long mental retardation." (Tr. 27). The Psychological diagnoses to which the ALJ referred were those of Dr. Annis and Doctor James E. Hord (Dr. Hord). Dr. Hord diagnosed Davis with: Anxiety Disorder NOS; Depression NOS; Paranoid Personality Disorder; and Histrionic Personality Disorder. (Tr. 241). Dr. Hord

noted Davis was a very neurotic individual at best and there are indications of a possible

underlying psychotic orientation," . . . "[d]epression is probably his most aggravating

pattern of symptomatology at this point but he is very agoraphobic, very paranoid and

very marginal in his adjustment pattern at best" and "I really think we need to know some

more about this individual, including his intellectual ability."  (Tr. 240-42).  Thus, Dr.

Annis performed the IQ test and determined Davis was mentally retarded.  (Tr. 244).

In rejecting the findings of Doctors Annis and Hord, the AlJ did not attack their

methodology nor their qualifications.  Neither does she rely on new IQ scores which place

the 1998 scores in doubt.  Rather, she relies on what she finds to be inconsistencies and

evidence in the record which contradict the medical findings.

First, the ALJ attacked Davis's educational history stating:

[T]he claimant did not receive special education training while in school
despite some assertions to the contrary (See Exhibits 3E and 1 SE). In fact, a
considerable discrepancy exists regarding just when the claimant stopped
attending school. He testified he quit school at age 17 or 18 in March 1988
while still attending only the 8th grade, but he originally reported attending
school into the 10th grade (See Exhibit 3E, P.6). Theses [sic] facts seriously
undermine the validity of his assertions regarding lifelong mental retardation
and his purported "social promotion."

(Tr. 27).  However, the evidence does not support the ALJ's conclusion that those facts

undermined Davis's diagnosis of mental retardation.  Two months prior to Davis's 17th

birthday, his school informed his mother that, with her permission, Davis would be placed

in a 9th grade home room and could take a trade course in building construction, but that

Davis would not be working toward a diploma.  The School reiterated that Davis "will not

be working toward a diploma but toward getting a skilled trade." (Tr. 200). Davis's

school records indicate that he repeated the third, fifth, and seventh grades due to failing

grades.  (Tr. 210).  In fact, his 7th grade records show that despite his second attempt at

7th grade, the school "socially promoted" him to 8th grade. (Tr. 201).

Second, the ALJ states that an "inference" of normal intellectual functioning can

be drawn from Davis's "arrest and conviction for a felony theft involving the use and

possession of forged documents, which are hardly the type of activities undertaken by the

mentally incompetent and illiterate." (Tr. 27).  Drawing an inference merely due to a

conviction, or the nature of the underlying crime, is unreasonable.  In order to properly

reject the strong evidence of mental retardation, the ALJ would have to point to the

specific facts and circumstances surrounding the conviction.  Without more, the mere fact

of a conviction does not negate a determination of mental retardation.

Third, the ALJ states that "[Davis's] mental capacity to repeatedly work in

unskilled employment, even at less than a substantial gainful activity level, is further

proof of a higher level of mental functioning than alleged." *Id*.  The ALJ appears to

believe that Davis's ability to hold any employment evidences a higher functioning level

then his reported IQ of 58.  However, the DSM-IV, classifies persons with an IQ of 58 to

suffer Mild Mental Retardation.  DSM-IV-TR, at 43.  Persons with mild mental

Retardation can achieve vocational skills.  *Id*.   The fact that Davis has worked

9

"repeatedly" is due to his inability to keep a job for any substantial length of time,  (Tr.

420) (Davis: "I haven't had -- I ain't never been on a job long."), and evidences his lack

of adaptive functioning.

Fourth, the ALJ relies on Dr. McKeown's diagnosis that Davis was malingering

during the psychological examination he preformed in November 2003.  Dr. McKeown's

finding of malingering was based on his impression that Davis was "extremely

circumstantial, passive aggressive and evasive."  (Tr. 263).  However, Dr. McKeown did

not perform an IQ examination, nor did he address Davis's previous IQ score of 58.

Davis's behavior during McKeown's examination does not refute a finding of mental

retardation, but it does support Dr. Hord's diagnosis that Davis suffers from Anxiety

Disorder NOS and Paranoid Personality Disorder, and that Davis is "very paranoid."

Fifth, the ALJ states when Davis "filed all of his Title XVI applications he was

made aware of his potential ineligibility should he "flee to avoid" jail, prison, or

"custody" after a felony conviction . . . [and Davis] was actually rounded up and arrested

on a fugitive warrant **after** being paroled in late calendar 1999/early calendar 2000. . .

[and the] same caveat was on every application he filed seeking Title XVI benefits (See

Exhibits 6D and I 9E)."  (Tr. 27).  Therefore, the ALJ "believe[d] [Davis] knew what he

was doing at all times."  *Id*.  The ALJ's conclusion that Davis is not mentally retarded

because of caveats contained on applications that informed him that should he "flee to

avoid jail, prison, or custody" he would be ineligible to receive benefits, then because

Davis continued to receive benefits after he fled, shows that Davis knew what he was

doing and evidences normal intellectual functioning, is illogical.

The ALJ's determination lacks substantial evidence.  Substantial evidence consists

of such "relevant evidence as a reasonable person would accept as adequate to support a

conclusion."  *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).  Davis was

found mentally retarded, along with other ailments, and those findings were accepted by a

prior ALJ.  In order to disregard his IQ score, the medical evidence indicating mental

retardation, and the prior determination of mental retardation, the current ALJ would need

adequate support of new relevant evidence that contradicted the prior findings.

It appears the ALJ attempted to "secure an updated consultive psychological

examination of [Davis]." (Tr. 19).  After two unsuccessful attempts, the ALJ declared the

evidentiary record closed.  *Id*.  Finding the record "more then sufficient" to render a

decision the ALJ declared that she could not "overemphasize the claimant's initial burden

of providing evidence of his disability, and just how severe it is."  *Id*.  The ALJ was

correct that Davis bore the burden however, with the record closed, the overwhelming

evidence presented to the ALJ was that Davis has an IQ score of 58 and had been

adjudged mentally retarded and disabled by another ALJ.  Such strong evidence cannot be

set aside by inferences and speculation.  Much of what the ALJ relied on to find that

Davis was not mentally retarded was either evidence irrelevant to the question of mental

retardation, or evidence that tended to support Davis's claim.

Further, the ALJ's decision is rife with personal opinions, rather then expert opinions, concerning what constitutes appropriate levels of functioning of mentally retarded persons. For example, at the first step of the five-step sequential evaluation process, wherein the ALJ is to determine whether Davis has engaged in substantial gainful activity since filing for benefits, the ALJ states:

> However, the claimant admits engaging in unskilled work as a janitor, construction laborer, and poultry plant processor in the past, with construction work performed in both calendar [year] 2003 and 2004 . . . The claimant's duties included operation of a forklift to move large merchandise, presumably in a warehouse setting, in addition to janitorial work (See Exhibit 8D). I again note that such activities are hardly what one would expect from a mentally retarded and totally disabled man.

(Tr. 25). This characterization of Davis's employment history misrepresents the actual facts surrounding his employment experiences. For example; the "construction work" Davis performed involved "picking up stuff around the construction yard," (Tr. 419), a job he quit because "there was a guy there that was always picking on [Davis] and starting trouble with [him] and stuff." *Id*. Being picked on and having trouble with co-workers was a common occurrence for Davis. In response to the question of why he quit his job at the chicken plant, Davis stated "because of the, the chickens and folks making fun at me and stuff because I, I was scared to pick up the chickens and stuff like that." (Tr. 420). Thus, the true facts and circumstances surrounding Davis's employment history evidence a person who suffers deficiencies in adaptive functioning and support his claim of mental retardation.

12

The substantial evidence in this case supports Davis's claim of mental retardation.

Thus, this case is properly remanded back to the ALJ for further proceedings. *Hodges v.*

*Barnhart*, 276 F.3d 1265, 1269 (11th Cir. 2001) ("A presumption of mental impairment

before age 22 does not [] shift the burden of proof from a claimant to prove entitlement to

social security benefits.").[5]

## V.   CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*,

the Court concludes that the ALJ's non-disability determination is due to be remanded.  It

is, therefore, **ORDERED** that the decision of the Commissioner is **REVERSED AND**

**REMANDED.**   A separate judgment is entered herewith.

DONE this 25th day of November, 2008.

/s/ Wallace Capel, Jr.

WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

---

[5]  Because the Court has determined the ALJ erred in determining that Davis was not mentally retarded, and that error requires the ALJ restart the determination process, the Court need not address Davis's other claims.